**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| E2E PROCESSING, INC., | Case No. 2:14-cv-00036 |
| Plaintiff, | (Lead Case) |
| vs. | [Related Cases: 2:14-cv-00037; 2:14-cv-00038; 2:14-cv-00039] |
| CABELA'S INCORPORATED, | |
| Defendant. | |
| AND ALL CONSOLIDATED ACTIONS | |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ....................................................................................................1

II.     LEGAL STANDARDS ............................................................................................3

III.    DISCUSSION ..........................................................................................................4

        A.     The "Component" Terms Are Not in Means-Plus-Function Format, and
            Are Not Indefinite ........................................................................................5

            1.     The Component Terms Are Not In Means-Plus-Function Format .............5

                (a)     The Component Terms Do Not Recite the Function
                     Defendants' Identify ..................................................................6

                (b)     The Term "Component" Recites Sufficiently Definite
                     Structure ....................................................................................7

            2.     The Component Terms Are Definite, Even if Governed by Section
               112(f).....................................................................................................8

        B.     Claim Terms............................................................................................12

            1.     Preamble ("Exchanging information in a manufacturing
               environment between a manufacturer and a customer")............................12

            2.     "Selector component" ..................................................................14

            3.     "Adapter component" ..................................................................15

            4.     "Invoking an internet server application program interface
               component to pass the extensible markup language document to an
               integration component"..............................................................16

            5.     "Integration component"..............................................................19

            6.     "Internet server application program interface component".....................20

IV.     CONCLUSION........................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007) ............................................................3

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002) .........................................................12

*Am. Med. Sys. v. Biolitec, Inc.*,
    618 F.3d 1354 (Fed. Cir. 2010) ...................................................12, 13

*August Tech. Corp. v. Camtek, Ltd.*,
    655 F.3d 1278 (Fed. Cir. 2011) ...........................................................3

*Creo Prods. v. Presstek, Inc.*,
    305 F.3d 1337 (Fed. Cir. 2002) .......................................................6, 9

*Flo Healthcare Solutions, LLC v. Kappos*,
    697 F.3d 1367 (Fed. Cir. 2012) ...........................................................8

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ...........................................................4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004) .........................................................12

*Inventio AG v. Thyssenkrupp Elevator Americas Corp.*,
    649 F.3d 1350 (Fed.Cir.2011) .............................................................5

*Laryngeal Mask Co. Ltd. v. Ambu A/S*,
    618 F.3d 1367 (Fed. Cir. 2010) .........................................................21

*Lighting World v. Birchwood Lighting*,
    382 F.3d 1354 (Fed. Cir. 2004) ...........................................................7

*Lodsys, LLC v. Brother Int'l Corp.*,
    2013 U.S. Dist. LEXIS 85614 (E.D. Tex. June 14, 2013) ..............5, 7

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ...............................................................3

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ..........................................................................19

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (U.S. 2011)...................................................................................8

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   2015 U.S. App. LEXIS 2393 (Fed. Cir. Feb. 18, 2015) ..............................12, 14

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................................................*passim*

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005) ......................................................................4, 18

*Serrano v. Telular Corp.*,
   111 F.3d 1578 (Fed. Cir. 1997) ...........................................................................7

*Stragent, LLC v. Amazon, Inc.*,
   2011 U.S. Dist. LEXIS 61041 (E.D. Tex. Jun. 7, 2011) ......................................8

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ...........................................................................4

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011) ...........................................................................3

*Widevine Techs., Inc. v. Verimatrix, Inc.*,
   2009 U.S. Dist. LEXIS 102768 (E.D. Tex. Nov. 4, 2009)...................................7

**Statutes**

35 U.S.C. § 112(6) ........................................................................5, 14, 15, 19

35 U.S.C. § 112(f) ..................................................................................*passim*

35 U.S.C. § 282............................................................................................8

**Other Authorities**

Wikipedia, "XML", *available at:*
   http://en.wikipedia.org/wiki/XML#History.......................................................11

Wikipedia, "Application Programming Interface", *available at:*
   http://en.wikipedia.org/wiki/Application_programming_interface...................20

## I.     __INTRODUCTION__

Defendants Cabela's Incorporated, Crocs, Inc., Hallmark Cards Incorporated, and Nordstrom, Inc. (collectively, "Defendants") request that the Court construe six terms that appear in asserted claim 7 of U.S. Patent No. 6,981,222 ("the '222 Patent," attached hereto as Declaration of Ryan E. Hatch ("Hatch Decl.") Ex. A).  Plaintiff E2E Processing, Inc. ("E2E" or "Plaintiff") submits this claim construction brief for the six terms identified by the parties in the Joint Claim Construction and Prehearing Statement ("JCCS," Case No. 2:14-cv-00036, Dkt. 70, "Hatch Decl." Ex. B.)

The '222 Patent is generally directed to an end-to-end transaction processing system and method that uses Extensible Markup Language ("XML") documents to obtain information from back-office database servers, to be transmitted to consumers.  In simple terms, "XML provides a structured syntax for the storage and delivery of information, even highly complex information." ('222 Patent at 9:48.)  Thus, an XML document provides a means for transferring highly complex information across networks between foreign systems. (*Id*. at 9:50-55.)  Therefore, an XML based system may pass instructions for complex database manipulations between systems connected by networks, even between foreign systems.  (*Id*.)

In addition to disputing the meaning of certain terms in claim 7, the parties dispute whether the terms "selector component," "adapter component," and "integration component" are "means-plus function" elements governed by 35 U.S.C. Section 112(f), and if so, whether there is sufficient corresponding structure.  Tellingly, these terms lack all of the hallmarks of a means-plus-function limitation.  They do not use the word "means," do not recite the function identified by Defendants, and there is sufficient structure set out in the very term "component." Defendants therefore cannot overcome the strong presumption that Section 112(f) does not apply, which follows from not using the word "means" in the claim.  Even if this presumption

could be overcome, the '222 Patent does not lack corresponding structure to a person of skill in the art ("POSA").  Defendants contend that a POSA would need a formal description of the XML to understand the selector component, adapter, component, and integration component. Not so.  Creating a formal description of XML is well within the abilities of a novice programmer, much less the POSA of the '222 Patent, as the parties' experts do not even dispute.

Defendants' constructions for the remaining terms violate well-established principles of claim construction.  A claim's preamble generally does not limit the claims, and claim 7 is no different.  Here, the preamble merely states the purpose or intended use of the invention, can even be deleted without affecting the structure or steps of the claim, and does not provide antecedent basis for any elements recited in the body of the claim – all of which demonstrate that it is not limiting.  Nonetheless, Defendants wrongly assumes the preamble is limiting, and improperly read into the claim language from extrinsic dictionary definitions, which the Federal Circuit has specifically warned against.

The parties also dispute the nature of the XML document recited in claim 7, and in particular how the document is generated and subsequently processed.  E2E's construction recognizes that the XML document is not limited to the "same" piece of data that remains unchanged from its inception to when it is passed to the integration component.  Instead, its content can be modified as it is processed by the various components in the system.  Defendants' construction, on the other hand, requires passing to the integration component "the same" XML document that was passed to the selector component and adapter component, which could potentially exclude the modifications described in the specification.

Finally, Defendants' construction for "internet server application program interface component" runs afoul of the important principle of claim construction that claims are not limited to a specific embodiment described in the specification. The claim does not limit the

2

invention to a specific Microsoft "DLL" and "IIS" technology.  While this example is provided in the specification, the claims of the patent are not limited to the examples provided in the specification.

Defendants' constructions not adhere to the correct principles of claim construction and should not be adopted.  To the extent any terms require construction, E2E's constructions follow correct principles of claim construction, and should be adopted.

## II.   <u>LEGAL STANDARDS</u>

Claim construction is a question of law to be decided by the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  In construing claim terms, the Court must begin with an examination of the claim language itself.  *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011).  The terms used in the claims are generally given their "ordinary and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  This is the meaning as understood by a person of ordinary skill in the art at the time of the invention.  *Id*. at 1313.  Not all terms have a special meaning or need to be construed.  *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) (affirming the district court's ruling that no construction was necessary for the term "operating in conjunction" because the meaning was clear).  For example, a term's ordinary meaning may be readily apparent, in which case the Court need only apply the widely accepted meaning of commonly understood words.  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007).

A patentee is presumed to have intended the ordinary meaning in the absence of an express intent to the contrary.  *Phillips*, 415 F.3d at 1303 (Fed. Cir. 2005).  In this regard, the specification and prosecution history may only compel departure from the plain meaning in two instances: lexicography and disavowal.  *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d

1304, 1309 (Fed. Cir. 2014).  The standards for finding lexicography and disavowal are "exacting."  *Id*.  To act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term."  *Id*.  Similarly, disavowal requires that "the specification [or prosecution history] make[] clear that the invention does not include a particular feature." *Id., citing SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).

The person of ordinary skill in the art is deemed to read the claim term in the context of the entire patent.  *Phillips*, 415 F.3d at 1313.  Thus, claim terms are interpreted in light of the intrinsic evidence of record, including the specification, written description, drawings, and prosecution history.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324-25 (Fed. Cir. 2002).  As the Federal Circuit has emphasized, "[a] claim construction that excludes a preferred embodiment … is rarely, if ever, correct."  *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).  At the same time, although the specification often describes very specific embodiments of the invention, the Federal Circuit has "repeatedly warned against confining the claims to those embodiments."  *Phillips*, 415 F.3d at 1323.

## III.   **DISCUSSION**

In addition to disputing the meaning of certain claim terms, the parties dispute whether the terms "selector component," "adapter component," and "integration component" (collectively, the "Component Terms") are "Indefinite under [35 U.S.C.] Section 112 (6)," as Defendants contend.  (JCCS at 2, 4, and 6.)  As discussed below, Defendants' positions on invalidity and claim construction are incorrect, and should not be adopted.

## A.    The "Component" Terms Are Not in Means-Plus-Function Format, and Are Not Indefinite

Section 112(6), now codified as 112(f), only governs elements expressed as "a means or step for performing a specified function," and provides that such claims "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  These are not means-plus-function terms, and even if they were, are not indefinite.

### 1.    The Component Terms Are Not In Means-Plus-Function Format

The Component Terms lack all of the "hallmarks of a means-plus-function limitation," namely: (1) that the limitation is "expressed in terms using the words 'means' or 'step'," (2) "a specified function follows the 'means' or 'step' and is linked to the 'means' or 'step'," and (3) "there is insufficient structure, materials, or acts set out in the claim for achieving the specified function."  *Lodsys, LLC v. Brother Int'l Corp.*, 2013 U.S. Dist. LEXIS 85614, *117 (E.D. Tex. June 14, 2013).  None of these hallmarks are shown, and Defendants cannot overcome the strong presumption that Section 112(f) does not apply.

As the Component Terms do not recite "means," there is a strong presumption that the terms are not governed by § 112(f).  *See Inventio AG v. Thyssenkrupp Elevator Americas Corp.*, 649 F.3d 1350, 1356 and 1358 (Fed.Cir.2011) ("where, as here, the claim language does not recite the term 'means,' we presume that the limitation does not invoke § 112, ¶ 6. *** Our cases make clear, however, that the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome.")  Defendants have the burden of overcoming this presumption.  *Lodsys*, 2013 U.S. Dist. LEXIS 85614 *134.  They can only meet this burden if "the claim term fails to 'recite sufficiently definite structure' or else 'recites 'function without reciting sufficient structure for performing that function.'"  *Lodsys*, 2013 U.S. Dist. LEXIS 85614 *124-125, *citing Lighting World v. Birchwood Lighting*, 382 F.3d 1354, 1358 (Fed. Cir.

2004).  Neither of these conditions are met.

**(a)      The Component Terms Do Not Recite the Function**

**Defendants' Identify**

The Component Terms do not recite the purported "functions" that Defendants identify. This is fatal to Defendants' arguments, because Section 112(f) only governs elements expressed as "a means or step for performing a ***specified function***."  The specified function "must come from the claim language itself" and cannot be read into the claims. *See, e.g., Creo Prods. v. Presstek, Inc.*, 305 F.3d 1337, 1334 (Fed. Cir. 2002), *citing Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258, 52 U.S.P.Q.2D (BNA) 1258, 1263 (Fed. Cir. 1999) (the "statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim.")  Because none of the purported functions are recited anywhere in claim 7, as shown in the following table, these terms cannot be in "means-plus-function" format.

| '222 Patent, Claim 7 | Purported Function – Not Recited in the Claim |
|---|---|
| 7. A method of exchanging information in a manufacturing environment between a manufacturer and a customer, comprising the steps of: | *Selector component*: "selecting an adapter component" |
| initiating a logical session between a customer and an application server; | *Adapter component*: "adapting for a particular remote back-office database server" |
| receiving from a customer a request for information; | |
| processing the request for information from the customer, including generating an extensible markup language document, passing the extensible markup language document to a **selector component**, processing header information on the extensible markup language document, and passing the extensible markup language document to an **adapter component**; | *Integration component*: "integrating to retrieve the requested information" |
| transmitting the processed request for information to a remote back-office database server, including | |

6

| invoking a remote procedure call to a remote database system through a proxy object, and<br><br>invoking an internet server application program interface component to pass the extensible markup language document to an **integration component**;<br><br>receiving information from the back-office database server; and<br><br>transmitting to the customer the information received. | |

Because the claim does not recite the purported functions, the Court should "simply apply the claim language to the accused devices free from the limiting requirements of section 112, P 6." *Serrano v. Telular Corp.*, 111 F.3d 1578 (Fed. Cir. 1997).

### (b)    The Term "Component" Recites Sufficiently Definite Structure

These terms are not in means-plus-function format for the additional reason that the term "component" itself recites sufficiently definite structure in the form of a software program.  As this Court has previously held, the term "component" is not a "nonce" word, i.e. a word that is coined for or used on one occasion, but rather, "the word 'component' is … a common English language word that bears a structural connotation."  *Lodsys*, 2013 U.S. Dist. LEXIS 85614 *129; *see also Widevine Techs., Inc. v. Verimatrix, Inc.,* 2009 U.S. Dist. LEXIS 102768 *45 (E.D. Tex. Nov. 4, 2009) (holding that the term "component" is "not governed by 35 U.S.C. § 112(6)," and means "a downloadable software component.")

Structure for "component" – i.e. a software program – is shown in Defendants' own extrinsic evidence.  The Federal Circuit has "looked to the dictionary to determine if a disputed term has achieved recognition as a noun denoting structure."  *Lighting World*, 382 F.3d at 1360-61.  According to Defendants' expert, "[w]hen used in a software context a component generally refers to 'a software package or module that encapsulates a set of related functions or data."  (Declaration of Edward R. "Ed" Tittel ("Tittel Decl," Exhibit A to the Joint Claim Construction

and Prehearing Statement attached hereto as Hatch Decl. Ex. B.) ¶ 35.  Because the term

"component" as used in claim 7 of the '222 Patent is understood in common parlance to refer to

the structure of a software program, as Defendants do not dispute, Section 112(f) does not apply.

*See Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1374 (Fed. Cir. 2012) (Section

112 ¶ 6 does not apply "if the limitation contains a term that is used in common parlance or by

persons of skill in the pertinent art to designate structure"), *Stragent, LLC v. Amazon, Inc.*, 2011

U.S. Dist. LEXIS 61041 (E.D. Tex. Jun. 7, 2011) ("because the term 'engine' is understood to be

a software program, § 112 ¶ 6 does not apply").

Defendants' have not overcome the strong presumption that Section 112(f) does not

apply.  There is no "means," no "function," and the term "component" refers to structure.  As

Section 112(f) does not apply, there is no need for the Court to consider Defendants'

indefiniteness argument based on lack of corresponding structure in the specification.

### 2.      The Component Terms Are Definite, Even if Governed by Section 112(f)

Even if the Court determines that Defendants have overcome the strong presumption

against application of Section 112(f), the "component" terms should not be found indefinite

because Defendants have failed to show that the '222 Patent lacks corresponding structure to a

person of skill in the art ("POSA").  Under 35 U.S.C. § 282, claim 7 of the '222 Patent is

presumed valid and the burden of establishing invalidity rests on Defendants.  As an invalidity

defense, indefiniteness must be "proved by clear and convincing evidence."  *Microsoft Corp. v.*

*i4i Ltd. P'ship*, 131 S. Ct. 2238 (U.S. 2011).

The parties' experts disagree on the fundamental premise of Defendants' argument,

which is that a POSA "would need a formal description of the XML" to understand the selector

component, adapter, component, and integration component.  (JCCS at 11.)  Defendants'

contend that the "formal description" must be in the form of: 1) example XML markup, 2) an XML schema or document definition, or 3) equivalent information intelligible to a person of ordinary skill in the art. (Tittel Decl. ¶¶ 60, 61, 64, 72, 76 and 79.)

E2E's expert Dr. Trevor Smedley disagreed.  He testified that such specific information does not need to be provided for a POSA to understand the terms "selector component," "adapter component," and "integration component."  (Declaration of Dr. Trevor Smedley ("Smedley Decl.," Exhibit B to the Joint Claim Construction and Prehearing Statement (Hatch Decl. Ex. B.)) ¶ 12.)  An XML schema is a type of source code that describes the structure of documents, which is similar to, for example, C++ source code that describes the implementation of algorithms.  (*Id.* ¶ 11.)  A POSA would be able to take the claims of the '222 Patent and the description in the specification and implement an appropriate XML schema.  (*Id.*)  This is similar to writing source code to implement an algorithm, based on the functionality that is to be implemented.  (*Id.*)  Furthermore, Dr. Smedley testified that for any given method, there are different ways to write source code to carry out a given function, and this choice of implementation in code is precisely the skill that is possessed by a POSA.  (*Id.*)  Importantly, the knowledge of one skilled in the art – including the ability to create XML markup, schemas, document definitions – "can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness."  *Creo Prods. v. Presstek, Inc.*, 305 F.3d 1337 (Fed. Cir. 2002).

Defendants' expert Mr. Tittel has expressed essentially the same view, that creating XML documents, schemas, and document definitions (DTDs) is well within the abilities of a novice programmer, much less the POSA of the '222 Patent.   In his 2004 book "XML for Dummies," Mr. Tittel explained that a developer can easily create XML markup from scratch using widely

available text editors.[1]  He or she could also create or reuse an XML schema or document

definition, without first being given this information.[2]  As to the document definition, he

explained that these "aren't actually required" because XML processors can "*infer* the rules that

govern the document."[3]  Although Mr. Tittel now testifies that POSA would need to be provided

this information, he stated the opposite position in his book.  To the extent this information could

not be created or located by a POSA, the '222 Patent priority application even explicitly

identifies an example XML schema / DTD set from Commerce One that could be used.[4]

Moreover, by Mr. Tittel's own admissions, a POSA with respect to the '222 Patent would

have even greater abilities to create and process XML documents, schemas, and definitions than

what is explained in his "Dummies" reference.  The reader of "Dummies" is only assumed to be

familiar with text files and text editors, to have a working connection to the Internet, to know the

---

[1] XML "is not difficult to implement as a solution for data collection, storage, and exchange" and XML documents can be created with "regular old-fashioned text editors (such as Notepad)." (Excerpts from XML for Dummies ("Dummies," attached hereto as Hatch Decl., Ex. C) at 21 and 23.)  "If you can write a sentence and you know the difference between a heading and a paragraph, you can build and publish your own XML documents."  (Dummies at 4.)

[2] "It's important that you look around for predefined schemas and DTDs before you try to create your own."  (*Id*. at 35.)  "When an existing document description can accommodate your data or documents, you don't need to create a document description."  (*Id*. at 79.)  "You can, of course, build schema documents from scratch...." (*Id*. at 136.)

[3] It's "not worth creating your own formal XML document description" unless there are "sizable collections of documents or data to manage," the data is "pretty complex," or "[y]ou want to promote a new industry standard." (Id. at 80.)  Document definitions "aren't actually required" because XML processors can "*infer* the rules that govern the document."  (Id. at 112, emphasis in original.)

[4] U.S. Pat. App. No. 60/225,339, p. A-6 ("**XML Messages**[.] The Click Commerce applications read and write XML documents.  Most of the documents are from an industry standard set developed by Commerce One.")  The Commerce One XML schemas and standards were publicly available at least as of July 1999.  *See, e.g.,* http://www.thefreelibrary.com/_/print/PrintArticle.aspx?id=55271993 ("CBL 2.0 is the first XML specification for electronic commerce designed to take advantage of the expressive power of XML schemas. As a demonstration of its commitment to interoperability, Commerce One is releasing CBL in three different schema languages, Microsoft's XML Data Reduced (XDR), the World Wide Web Consortium's (W3C), XML Schema Definition Language (XSDL), and Commerce One's Schema for Object-oriented XML (SOX).")

difference between a Web Browser and Web server, and to want to build XML documents "for fun, for profit, or because it's part of your job." (Dummies at 3.)  This is a relatively low degree of skill compared to the POSA of the '222 Patent, who the experts agree at least has a Bachelor's Degree in Computer Science (or similar field) and one year or more of programming experience. (*See* Smedley Decl. ¶ 5; Tittel Decl. ¶ 17.)  If the "Dummies" reader can readily create and reuse XML documents, schemas, and document definitions, then the POSA with respect to the '222 Patent can do the same, and more.

At the very least, Mr. Tittle's contradictory views, as expressed in his declaration versus his "Dummies" book, do not rise to the level of "clear and convincing evidence" that Defendants must meet to show invalidity of a patent.  Bias in expert opinions generated for litigation is one of the reasons the Federal Circuit has found expert evidence to be "generally less reliable" in determining claim scope.  *See Phillips*, 415 F.3d at 1318 (Fed. Cir. 2005) ("[E]xtrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence.")  This bias is "exacerbated if the expert is not one of skill in the relevant art," *Id*.  In this regard, Mr. Tittel does not appear to be a person of skill in the art under his own definition.  He does not have one or two years of experience with XML 1.0 as of 1998, which would be impossible for a person of "ordinary" skill because XML 1.0 was not even a standard until February of 1998.[5]

---

[5] According to Mr. Tittel, "[a]t the time of the purported priority date for the '222 Patent (October 28, 1998), a person of ordinary skill in the art would have had a bachelor's degree in computer science, computer engineering, manufacturing information systems, or some similar field, along with one or two years' of programming experience working with HTML (HTML 3.2 and 4.0) and XML (XML 1.0)...." (Tittel Decl. ¶ 17.)  However, XML 1.0 only became a W3C Recommendation on February 10, 1998, meaning that an ordinary person could only have had a maximum of six months experience with XML 1.0 as of the date Mr. Tittel applies.  *See* http://en.wikipedia.org/wiki/XML#History.  Indeed, in a different 2002 book co-authored by Mr. Tittel, he states that "[w]e've been building XML documents and applications for almost four years now...," meaning that he himself only began using XML four years earlier, or in 1998.

Defendants' evidence is neither clear nor convincing, because it is contradictory, applies an unreasonable POSA standard, and ignores the abilities of a POSA to create the very kinds of information Defendants contend must be provided.  The Court should therefore reject Defendants' arguments that the claim is indefinite.

### B.    Claim Terms

### 1.    Preamble ("Exchanging information in a manufacturing environment between a manufacturer and a customer")

| Plaintiff | Defendant |
|---|---|
| The preamble is not limiting. | *The preamble is limiting*<br><br>"the sharing of information in a manufacturing environment between a maker, by hand or by machinery, of tangible goods and a purchaser of tangible goods" |

A key tenet of claim construction is that "[g]enerally, the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002).  The burden is therefore on Defendants to demonstrate that the preamble "breathe[s] life and meaning" into the claim.  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1118 (Fed. Cir. 2004).

Here, the preamble of claim 7 recites "Exchanging information in a manufacturing environment between a manufacturer and a customer, comprising the steps of."  This merely states the purpose or intended use of the invention, which is generally "not treated as limiting the scope of the claim."  *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 2015 U.S. App. LEXIS 2393 (Fed. Cir. Feb. 18, 2015).  Moreover, this language is not limiting because it can be deleted

---

(XML Schemas, Introduction at xx (page 20), attached as Hatch Decl. Ex. D.)

without affecting the structure or steps of the claim. *See Am. Med. Sys. v. Biolitec, Inc.*, 618 F.3d 1354, 1358-1359 (Fed. Cir. 2010) ("the preamble is not regarded as limiting, however, 'when the claim body describes a structurally complete invention such that  deletion of the preamble phrase does not affect the structure or steps of the claimed invention.")  Without the preamble, the body of the claim is entirely self-contained:

> initiating a logical session between a customer and an application server;
>
> receiving from a customer a request for information;
>
> processing the request for information from the customer, including generating an extensible markup language document, passing the extensible markup language document to a selector component, processing header information on the extensible markup language document, and passing the extensible markup language document to an adapter component;
>
> transmitting the processed request for information to a remote back-office database server, including
>
>> invoking a remote procedure call to a remote database system through a proxy object, and
>>
>> invoking an internet server application program interface component to pass the extensible markup language document to an integration component;
>
> receiving information from the back-office database server; and
>
> transmitting to the customer the information received.

The preamble does not provide antecedent basis for any elements recited in the body of the claim, which further shows that it is not limiting.  *See Id*. ("[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.")  The term "manufacturer" does not appear anywhere in the body of the claim, and while the terms "information" and "customer" appear later in the claim, it is not with reference to "the" information or "the" customer of the preamble, but "a" customer or "a request for information.  These references are entirely self-contained and

13

do not find antecedent basis in the preamble.

Because the preamble is not limiting, it is not necessary for the Court to consider Defendants' proposed construction or otherwise construe the preamble language.  However, if the preamble is found to be limiting, it should be given its plain and ordinary meaning and Defendants' proposed construction is flawed and should not be adopted.  Defendants improperly seek to read into the claim the concept of "a maker, by hand or by machinery, of tangible goods and a purchaser of tangible goods."  Such language never appears anywhere in the '222 Patent's claims, specification or file history, and there is no evidence that the patentee intended to limit the claim in this narrow manner.  Defendants seek to import language from extrinsic dictionary definitions of "manufacture," which the Federal Circuit has specifically warned against.  *See Phillips*, 415 F.3d at 1320 (Fed. Cir. 2005) ("heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.")  Absent any disclaimer or lexicography, which does not exist, there is simply no basis to narrow the claim to import language from the dictionary into the claim.  *Pacing Techs.*, 2015 U.S. App. LEXIS 2393, 6-7 (Fed. Cir. Feb. 18, 2015) ("The specification and prosecution history compel departure from the plain meaning in only two instances: lexicography and disavowal.")

### 2.  "Selector component"

| Plaintiff | Defendant |
|---|---|
| Not governed by 35 U.S.C. § 112, ¶ 6.   Plain meaning, or:<br><br>**A component that reads the header information in the XML document and sends the XML document to the adapter component** | *Indefinite under Section 112(6)*<br><br>Function: selecting an adapter component<br><br>Structure/Algorithm: None provided. |

As discussed above in Section III.A, the term "selector component" is not in means-plus-function format and is not indefinite, which are the only arguments that Defendants advance for this term.  Defendants do not propose any construction, and no construction is necessary other than to resolve the dispute under Section 112(f).

To the extent any construction is necessary, E2E's construction of "a component that reads the header information in the XML document and sends the XML document to the adapter component" is consistent with the specification, which explains that "Selector component 208 reads the header node information in the XML document and sends the XML document to adapter components 210."  (10:28-30.)   E2E's proposed construction should therefore be adopted, to the extent any construction is necessary.

### 3.    "Adapter component"

| Plaintiff | Defendant |
|---|---|
| Not governed by 35 U.S.C. § 112, ¶ 6.   Plain meaning, or:<br><br>**A component that processes an XML message for the remote back-office database server.** | *Indefinite under Section 112(6)*<br><br>Function: adapting for a particular remote back-office database server.<br><br>Structure/Algorithm: None provided. |

As discussed above in Section III.A, the term "adapter component" is not in means-plus-function format and is not indefinite, which are the only arguments that Defendants advance for this term.  Defendants do not propose any construction, and no construction is necessary other than to resolve the dispute under Section 112(f).

To the extent any construction is necessary, E2E's construction of "a component that processes an XML message for the remote back-office database server" is consistent with the claims and specification.  The specification explains that "Adapter components 210 enable preprocessing of the XML message…." (10:34-35.)  Similarly, claim 7 recites "transmitting the

15

processed request for information to a remote back-office database server." E2E's proposed construction is therefore consistent with the evidence and should be adopted, to the extent any construction is necessary.

    **4.**    **"Invoking an internet server application program interface component to pass the extensible markup language document to an integration component"**

| Plaintiff | Defendant |
|---|---|
| Plain meaning, or:<br><br>**Invoking an [internet server application program interface component] to pass to an [integration component] the processed extensible markup language document.** | Invoking an [internet server application program interface component] to pass to an [integration component] the same extensible markup language document that was passed to the [selector component] and [adapter component] |

The parties dispute the nature of the "extensible markup language document" that is passed to the integration component, and in particular how the document is generated and subsequently processed.  In relevant part the claim reads as follows (with the instant claim term in italics):

> "processing the request for information from the customer, including generating an extensible markup language document, passing the extensible markup language document to a selector component, processing header information on the extensible markup language document, and passing the extensible markup language document to an adapter component;
>
> transmitting the processed request for information to a remote back-office database server, including
>
> invoking a remote procedure call to a remote database system through a proxy object, and
>
> *invoking an internet server application program interface component to pass the extensible markup language document to an integration component*"

In the context of the '222 Patent, the first step in the lifecycle of the XML document is "generating an extensible markup language document" and passing the document to a selector component.  Next, the claim recites "processing header information on the extensible markup language document," and then passing the XML document to an adapter component.  Then, the claim recites transmitting the "processed request" to a remote back office database server, which includes the step in question, namely "invoking an internet server application program interface component to pass the extensible markup language document to an integration component."  To summarize, the claim recites that: 1) an XML document is generated, 2) header information on the document is processed, 3) the document is passed to an adapter component, 4) the processed request is passed to a database server, and 5) the document is passed to an integration component.

The specification teaches that these steps can involve modifications to the document. With reference to Fig. 2A, the application software 204 translates a request into an XML message that is passed to application adapter 206.  (10:14-15.)  The application adapter also receives an XML header node, and combines the header and message into a single document which is then passed to selector component 208. (10:25-28.)  The step of combining a header and message involves modification of the XML document that results.

The XML document is further processed by being passed in the form of a document object model (DOM) object to an adapter, which in turn converts the DOM object into an XML container object.  (10:39-45.)  According to Defendants' expert, DOM is a collection of rules "that allows programs and programming languages to ***access and update the content structure and style of documents*** in a standard way."  (Dummies at 235.)  Using DOM, computer programs can "reach out and grab a particular object, and manipulate it."  (*Id*. at 236.)  A DOM establishes a framework for systems using XML.  This step clearly involves further modification

17

to the document.

In the example embodiment of the specification, the XML container object is processed by a dynamically linked library (DLL) which parses and "populates the properties of the document." (10:45-48.) By definition, populating the document with data involves modification. After additional processing, the XML document is finally passed via a protocol called SOAP to an integration component, in accord with the claim element in question, which recites "*invoking an internet server application program interface component to pass the extensible markup language document to an integration component*." (11:1-8.)

Thus, based on the claims and specification, which are of paramount importance in construing the claim, it is evident that the XML document is not limited to a single piece of data that remains unchanged from its inception to when it is passed to the integration component. Instead, its content can be modified as it is processed by, and transferred between, the various components in the system. This is consistent with E2E's proposed construction, which provides for "invoking an [internet server application program interface component] to pass to an [integration component] ***the processed*** extensible markup language document" (emphasis added).

Defendants' construction requires passing to the integration component "the same" XML document that was passed to the selector component and adapter component. This could potentially exclude any modifications to the document, such as those described in the specification and discussed above. As the Federal Circuit has counseled, "[a] claim construction that excludes a preferred embodiment … is rarely, if ever, correct." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005). Defendants' construction is also inconsistent with the claim, which only refers to "the" XML document and does not require the document to be the "same" for the selector, adapter, and integration components.

Requiring the XML document to be the "same" is also confusing.  While this concept might make sense for paper documents, which can be tracked as physical documents, computers store documents as bits of data in memory, and not as physical objects.  Bits of data can be stored in different locations in transient memory, on different computer systems, in different formats, and can be modified, transferred, and operated on seamlessly.  Indeed, "the patentee's mere use of a term with an antecedent does not require that both terms have the same meaning." *Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008).  Here, requiring that the XML document be the "same" when it is transferred, modified, and processed by various components is incorrect, and would cause confusion as to what this even means in a computer context.

### 5.    "Integration component"

| Plaintiff | Defendant |
|---|---|
| Not governed by 35 U.S.C. § 112, ¶ 6.   Plain meaning, or:<br><br>**A component that processes incoming information, and accesses the appropriate database to retrieve the requested information or perform the requested manipulation.** | *Indefinite under Section 112(6)*<br><br>Function: integrating to retrieve the requested information<br><br>Structure/Algorithm: None provided. |

As discussed above in Section III.A, the term "integration component" is not in means-plus-function format and is not indefinite, which are the only arguments that Defendants advance for this term.  Defendants do not propose any construction, and no construction is necessary other than to resolve the dispute under Section 112(f).

To the extent any construction is necessary, E2E's construction of "a component that processes incoming information, and accesses the appropriate database to retrieve the requested information or perform the requested manipulation" is consistent with the claims and

specification.  It is clear that the integration component processes incoming information, because Claim 7 recites invoking an internet server application program interface component "pass the extensible markup language document to an integration component."  As explained by the specification, it also "accesses the appropriate database to retrieve the requested information or perform the requested manipulation." (11:11:4-8.)  E2E's proposed construction is therefore consistent with the evidence and should be adopted, to the extent any construction is necessary.

### 6.    "Internet server application program interface component"

| Plaintiff | Defendant |
|---|---|
| Plain meaning, or:<br><br>**An application program interface (API) component for an Internet server.** | ISAPI component, which is a dynamic link library (DLL) used by Microsoft Internet Information Server (IIS) to handle requests |

Claim 7 of the '222 Patent recites "invoking an *internet server application program interface component* to pass the extensible markup language document to an integration component."  The plain meaning of the term "internet server application program interface component," in view of the intrinsic and extrinsic evidence, is "an application program interface (API) component for an Internet server."  The term "application program interface," or "API," is commonly used in the software industry to refer to a set of routines, protocols, and tools for building software applications.[6]  In the claim, the API in question pertains generally to an "internet server," but is not limited to a specific type of server or specific set of APIs from a particular company such as Microsoft.

The specification is also instructive.  It discloses an embodiment in which a memory of a server computer (shown as computer 140 in Fig. 1) stores software, "such as, for example,

---

[6] See http://en.wikipedia.org/wiki/Application_programming_interface, visited 1/16/2015, attached as Hatch Decl. Ex. E, p. 1.

Internet Information Service (IIS) software and an internet server application program interface (ISAPI) dynamically linked library (DLL)." As its name implies, the Internet Information Service (IIS) software runs on an Internet server. The API that runs on IIS is an example of an API for an Internet server. E2E's construction is consistent with the intrinsic and extrinsic evidence, because it provides for "an application program interface (API) component for an Internet server." To the extent any construction is required, E2E's construction of "an application program interface (API) component for an Internet server" should therefore be adopted.

Defendants' construction runs afoul of the important principle of claim construction that claims are not limited to a specific embodiment described in the specification. *See Phillips*, 415 F.3d at 1322 (Fed. Cir. 2005) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining claims to those embodiments.") As noted above, the specification expressly states that the embodiment using the Microsoft IIS and DLL technology is an "example":

> "Back-office database server computer 140 comprises CPU 142 and memory 144 connected by bus 146. Memory 144 stores back-office database server software, such as, ***for example***, Internet Information Service (IIS) software and an internet server application program interface (ISAPI) dynamically linked library (DLL), as well as data and other software associated with resources resident on back-office database computer 140."

(8:55-63, emphasis added.) However, "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1311 (Fed. Cir. 2005). The claim does not limit the invention to a specific Microsoft "DLL" and "IIS" technology. While this "example" is provided in the specification, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."

*Id*. at 1323.  Defendants' construction does not adhere to the correct principles of claim construction and should not be adopted.[7]

Defendants' construction is also unacceptable because it converts the operation to the opposite of what the claim requires.   In the claim, the component is used to "***pass*** the extensible markup language document to an integration component,"  which Defendants' construction converts to a component used "to handle requests."  Passing information is the opposite of handling requests for information – in the former information is being *sent*, but in the latter it is being *received*.  Defendants' construction is not true to the claim language, which is of "primary importance, in the effort to ascertain precisely what it is that is patented."  *Id*. at 1303.

## IV.   CONCLUSION

For the above reasons, to the extent any construction is necessary for the identified claim terms, E2E's constructions are correct and should be adopted.

---

[7] Defendants' construction is also incorrect because it reads in the abbreviation "ISAPI," which was removed during prosecution following an objection by the examiner. (Nov. 12, 2004 Amendment at 12, attached as Hatch Decl., Ex. F.)  It is impermissible to read back into the claims limitations that were removed during prosecution. *See Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367 (Fed. Cir. 2010), *citing Kistler Instrumente Ag v. United States*, 628 F.2d 1303 (Ct. Cl. 1980) ("[D]efendant's insist[e]nce upon this court's reading back into the claims limitations which were originally there and were removed during prosecution of the application through the Patent Office cannot be permitted.")

Dated:  March 24, 2015                    Respectfully submitted,


By:  _____*/s/ Andrew W. Spangler*_____
                    Andrew W. Spangler
                    State Bar No. 24041960
                    Spangler Law P.C.
                    208 N. Green Street, Suite 300
                    Longview, TX 75601
                    (903) 753-9300
                    spangler@spanglerlawpc.com

                    Ryan E. Hatch (CSB No. 235577)
                    Liner LLP
                    1100 Glendon Avenue, 14th Floor
                    Los Angeles, CA 90024-3503
                    (310) 500-3500
                    rhatch@linerlaw.com


                    **Attorneys for E2E PROCESSING, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2015, I electronically filed the above document(s) with

the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all

registered counsel.


                    */s/Andrew W. Spangler*____
                    Andrew W. Spangler