**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| E2E PROCESSING, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 2:14-cv-36-JRG-RSP |
| § | |
| CABELA'S INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Cabela's Incorporated's ("Cabela's") Motion for Attorneys' and Experts' Fees (Dkt. No. 137, "Cabela's Fee Motion"), which was responded to by Plaintiff E2E Processing, Inc.'s ("E2E") in an Opposition (Dkt. No. 141), which was in turn responded to by Cabela's Reply in Support of Its Motion for Attorneys' and Experts' Fees (Dkt. No. 143). For the following reasons, the Court **DENIES** Cabela's Fee Motion (Dkt. No. 137).

**LEGAL STANDARD**

Title 35 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (concerning both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1757; *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014). "After determining that a case is exceptional, the district court must determine whether attorney fees are

appropriate," which is within the Court's discretion. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (citations omitted). A party must prove entitlement to attorney fees by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

## BACKGROUND

Plaintiff E2E filed its complaint against Cabela's on January 22, 2014, alleging infringement of U.S. Patent No. 6,981,222 ("the '222 patent"). (Dkt. No. 1 at 2, Dkt. No. 137 at 2). The '222 patent is entitled "End-to-End Transaction Processing and Statusing System and Method" and, according to its Abstract, is directed to a "system and method for end-to-end transaction processing and statusing". (Dkt. No. 1-1, Exhibit. A at 1). E2E served its First Amended Infringement Contentions to Cabela's on February 27, 2015, identifying Claim 7 as the sole Asserted Claim. (Dkt No. 137 at 2). On May 8, 2015, the Court issued preliminary constructions of disputed terms at a *Markman* claim construction hearing. *Id.* On July 2, 2015, the Court issued an Order affirming its previous preliminary constructions. (Dkt. No. 123). On August 5, 2015, E2E filed an Unopposed Motion to Dismiss All Claims and Counterclaims that dismissed its claims and Cabela's counterclaims asserted in the case under Federal Rule of Civil Procedure 41(a)(2). (Dkt. No. 135, "E2E's Voluntary Dismissal Motion"). On August 6, 2015, the Court issued an Order granting E2E's Voluntary Dismissal Motion. (Dkt. No. 136).

## DISCUSSION

The Court's analysis of Cabela's Fee Motion (Dkt. No. 127) will be divided into three main parts: (I) first, whether E2E's case was objectively reasonable; (II) second, whether E2E litigated its case in a reasonable manner; and (III) third, whether there are other bases to award attorney or expert fees under 35 U.S.C. § 285. The Court will address each of these three sections in turn.

### I. Whether E2E's Case Was Objectively Reasonable

Cabela's contends that E2E's case is meritless and "stands out" from the others because it is a "prime example" of cases where attorneys' fees were awarded when a patentee advanced meritless infringement positions and meritless claim construction arguments. (Dkt. No. 137 at 7). E2E responds by stating that their infringement allegations in this case have always been objectively reasonable. (Dkt. No. 141 at 1). Both Cabela's allegations and E2E's responses on whether E2E's case was objectively reasonable are grouped into four sections, which the Court will address in turn: (A) whether E2E's original infringement contentions were reasonable, (B) whether E2E's amended infringement contentions were reasonable, (C) whether E2E's Doctrine of Equivalents argument was reasonable and (D) whether E2E's damages case was reasonable.

#### A. E2E's Initial Infringement Contentions Were Objectively Reasonable

Cabela's alleges that E2E's initial infringement contentions were objectively unreasonable because E2E had no evidence suggesting that Cabela's might be using the accused IBM products on their accused website, http://www.cabelas.com. (Dkt. No. 137 at 7). Cabela's contends that all E2E had was an "excerpt from a third-party trade article" listing various IBM products next to a list of companies that included Cabela's, reproduced below, and taken from page 21 (page 26/32 of the PDF) of Dkt No. 137-4, Exhibit C (a slightly modified version is also reproduced in the Cabela's Fee Motion, Dkt. No. 137 at 7) (the Court's highlighting added):

| TABLE 2 | | |
|---|---|---|
| Vendor Applications and Experience: Advanced Omnichannel Order Orchestration, Optimization, and Fulfillment | | |
| | Applications | Customers |
| Epicor | Epicor Retail Suite: Epicor Retail Store, Enterprise Selling, CRM, Merchandising, Warehouse Management, Sales Audit, and BI | Sports Chalet, Famous Footwear, Orvis, American Eagle, Genesco, Chico's, VF Corp, Foot Locker |
| IBM | IBM Sterling Configure, Price, Quote; IBM Sterling Order Management, IBM Sterling Warehouse Management, IBM Sterling Transportation Management System, WebSphere Commerce | Nordstrom, Cabela's, Crocs, InterContinental Hotels |

As can be seen from the above "Table 2" the row labeled "IBM" contains a listing of various IBM products on the left and another listing of companies, that includes Cabela's (highlighted), on the right. (Dkt. No. 137-4, Exhibit C at 21 or page 26/32 of the PDF). Cabela's asserts that nothing in the above-excerpted table row (which they allege is "a general overview of retail business considerations regarding many different kinds of commerce channels…including social media, mobile commerce, in-store kiosks, catalogs and call centers") suggests that the accused IBM products might be used in connection with the accused http://www.cabelas.com website. (Dkt. No. 137 at 7-8). Therefore, Cabela's reasons that instead of reading on the asserted claim language involving handling customer website requests, the above-excerpted table row could be referring to Cabela's retail stores or catalog call centers or other aspects of Cabela's having nothing to do with its customer-facing websites, which is what the asserted claims primarily cover. (Dkt. No. 137 at 7).

In response, E2E argues that the above-excerpted table row belonged to a report from the global marketing intelligence firm IDC, a document among other produced documents showing that Cabela's was an IBM customer, and had purchased the originally-accused software products, including the IBM Sterling Commerce and Websphere Products that were accused in the originally filed infringement contentions. (Dkt. No. 141 at 3). Thus, E2E asserts that there was nothing unreasonable about their "good-faith belief" that Cabela's was using IBM products. The Court agrees. Considering the totality of the circumstances under *Octane Fitness*, it appears that in presenting its initial infringement contentions, E2E was not deliberately pursuing a frivolous claim, or motivated by baseless reasons or otherwise engaging in objectively unreasonable or "bad faith" behavior. *Octane Fitness*, 134 S. Ct. at 1757.

E2E simply relied on evidence that showed, to them, that Cabela's was using or at the very least had purchased the originally-accused IBM software products. There is nothing objectively unreasonable in a party basing their infringement contentions on produced documents that may or may not be the best possible proof of infringement. E2E was using the documents that were available to them during discovery, and can be determined to be exercising a good-faith belief that Cabela's was using the accused IBM software products.

As to Cabela's argument that E2E needed an objectively plausible reason to believe that every limitation of the asserted claims was met by their infringement contentions (Dkt. No. 137 at 8), and that they did not identify certain claim elements with enough specificity in the accused products (Dkt. No. 141 at 4), the Court finds that such a high bar is not required here. E2E points out that if Cabela's had a legitimate concern regarding the sufficiency of identification in E2E's original infringement contentions, then they could have raised that concern with the Court. (Dkt. No. 141 at 4-5). The fact that Cabela's did not do this, coupled with the fact that they also never moved to compel supplementation of E2E's infringement contentions with additional details tends to show that E2E's initial infringement contentions were objectively reasonable.

### B. E2E's Amended Infringement Contentions Were Objectively Reasonable

Cabela's next argues that E2E's amended infringement contentions had no objectively reasonable basis because E2E had no reason to believe that every claim limitation was met by Cabela's accused website. (Dkt. No. 137 at 9). Cabela's also states that two claim limitations in particular – the "selector component" and the "internet server application programming interface component" – were insufficiently or inaccurately identified in E2E's amended infringement contentions, particularly via the allegedly non-sensical and illogical testimony of E2E's expert Dr. Smedley, resulting in an essentially "baseless claim construction position." *Id.* at 9-11.

E2E responds that the Court previously found that E2E had demonstrated "good cause" to amend under P.R. 3-6(b) (Dkt. No. 126 at 2), that E2E had been diligent in seeking leave to amend, and that Cabela's has not described with specificity why it would be prejudiced. (Dkt. No. 141 at 5). E2E further contends that their reliance on their expert Dr. Smedley was entirely reasonable in forming an infringement argument in their amended infringement contentions, and that there is nothing unreliable or incorrect about Dr. Smedley's testimony. *Id.* at 6.

The Court agrees with E2E that Cabela's is requesting the application of an undue standard to E2E's amended infringement contentions. E2E's reliance on Dr. Smedley's testimony is objectively reasonable because "[r]easonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous." *SFA Sys., LLC v. Newegg Inc.,* 793 F.3d 1344 (Fed. Cir. 2015). E2E's amendment of their infringement contentions based on Dr. Smedley's testimony, which they reasonably believed to be accurate and sufficiently detailed as well, should also be viewed as objectively reasonable under the circumstances. It is the "substantive strength of [a] party's litigation position that is relevant to an exceptional case determination, not the correctness or eventual success of that position." *Id.* Therefore, the Court finds that E2E's amended infringement contentions were objectively reasonable, and were also reasonably supported by the law and Dr. Smedley's testimony.

## C.  E2E's Doctrine of Equivalents Arguments Was Reasonable

Cabela's next asserts that E2E's reliance on an alternative theory of infringement under the Doctrine of Equivalents ("DOE") is without a reasonable legal basis because of prosecution history estoppel. (Dkt. No. 137 at 11).

Cabela's contends that because the inventors of the '222 patent narrowed the claimed subject matter to overcome a prior art rejection, they are estopped from asserting the ceded claim limitations, which included "selector component" and "internet server application programming interface component".[1] (Dkt. No. 137 at 11). Cabela's further argued that E2E's expert Dr. Smedley did not rebut the presumption that DOE was not available and that his testimony was "entirely conclusory." *Id.* at 12.

E2E responded that their Dr. Smedley effectively rebutted the presumption that DOE was not available because he testified that "the equivalents in question would not have been reasonably foreseeable to a POSA [Person of Ordinary Skill in the Art] as of November 2004 when the amendment occurred." (Dkt. No. 141 at 8). E2E also argues that Dr. Smedley's testimony is not conclusory at all because it went to the "insubstantiality of the differences" between the claimed invention and the accused device or process, and that his testimony was included in an amended report to avoid motion practice regarding Cabela's failure to provide deposition testimony of a Cabela's corporate witness with knowledge of the accused systems. (Dkt. No. 141 at 8-9).

The Court finds that E2E's DOE argument was objectively reasonable and made with a reasonable legal basis. The fact that E2E utilized the testimony of Dr. Smedley to rebut the presumption of the DOE argument not being available due to prosecution history estoppel is not unreasonable. In fact, pursuing the DOE argument to its full extent and rebutting any presumptions that would eliminate it appears to be a reasonable litigation position and advocacy approach. As a result, the Court finds that E2E's DOE argument, and their efforts to preserve it, are objectively reasonable after considering the totality of the circumstances.

---

[1] The applicants of the '222 patent rewrote an independent claim (originally Claim 8) to include the subject matter of a dependent claim (originally Claim 12), this independent claim eventually becoming issued Claim 7, the sole Asserted Claim in the case.

### D. E2E's Damages Case Was Reasonable

Cabela's then contends that E2E presented a "meritless damages report" from Dr. Goedde that "ignored or violated fundamental tenets of patent damages recognized by the Federal Circuit as reasons for excluding damages testimony and for reversing damages awards." (Dkt. No. 137 at 12). Specifically, Cabela's asserts that: first, Dr. Goedde asserted that E2E would be the licensor in a hypothetical negotiation – but E2E did not own the patent until years after the point Dr. Goedde assumed infringement began; second, Dr. Goedde did not mention the entire market value rule (EMVR) or apportionment in his report, although he calculated his royalty figure using every online sale made by Cabela's; and third, Dr. Goedde also "cherry-picked" unrelated license agreements from an online database but ignored all existing licenses regarding the '222 patent without any explanation. (Dkt. No. 137 at 13).

E2E counters by stating that first, Cabela's own expert admitted that Dr. Goedde referred to the "time of infringement," which included the relevant time frame for the analysis and referring to the alternative part ("M2M") would have justified higher damages; second, Dr. Goedde did not ignore the EMVR or apportionment at all, but addressed these issues with respect to *Georgia Pacific* factors 12 and 13; and third, Dr. Goedde identified and analyzed what he determined to be "exemplary license agreements" involving business enterprise software patents representing a range of commercial royalty rates applicable in the industry, Cabela's damages expert did not produce any comparable patent licenses, and Dr. Goedde did not ignore but considered existing E2E licenses in his damages report. (Dkt. No. 141 at 9-10).

On balance, the Court finds that E2E's damages case, and reliance on its expert Dr. Goedde, was objectively reasonable under the circumstances. Again, relying on a damages expert and using that expert's testimony to compute damages is a reasonable, even expected

litigation tactic. As a result, the Court finds that upon an analysis of the totality of the circumstances, E2E's damages case, and reliance on Dr. Goedde's testimony, has an objectively reasonable legal basis.

## II.     Whether E2E Litigated in A Reasonable Manner

After repeating several of the arguments it made above, Cabela's next contends that because E2E filed an "objectively baseless lawsuit," ran up Cabela's litigation bill in pursuing its "untenable positions" even after it became clear that "it had no plausible claim of infringement," and only gave up on its pursuit under threat of a Rule 11 motion, that Cabela's should be entitled to an award of attorneys' fees and expenses, including expert fees. (Dkt. No. 137 at 13).

E2E responds by declaring that it was not unreasonable in dismissing the case when it did because Cabela's "refused to provide critical 30b6 testimony about its own product until after the close of fact discovery and opening expert reports" and also because the parties did not have the benefit of an issued Claim Construction Order from the Court when serving their opening expert reports. (Dkt. No. 141 at 10). They further blame Cabela's in waiting until the last possible day to serve E2E with a Rule 11 motion and state the reason for dismissing the case within days of that motion was to "conserve the Court's and the parties' resources and not because it lacked strong evidence of infringement." *Id.* at 11.

The Court finds that E2E's behavior still does not rise to the level of "objectively unreasonable" conduct that would make their case "exceptional" under 35 U.S.C. § 285 and *Octane Fitness*. In *Octane Fitness,* the Supreme Court stated that Congress used the word "exceptional" in 35 U.S.C. § 285 to mean "uncommon," "rare," or "not ordinary." *Octane Fitness,* 134 S. Ct. at 1756. Thus, it is clear from the above analysis that the way E2E litigated its case is not "exceptional" in that it's case is not one "that stands out from others with respect to

the substantive strength of [their] litigating position…or the unreasonable manner in which the case was litigated." *Id.*[2]

### III. Whether There Are Other Bases Under 35 U.S.C § 285 to Award Fees

Finally, Cabela's asserts that the Court should award attorneys' fees and other expenses under 35 U.S.C. § 285 due to its inherent authority to impose sanctions for "bad faith conduct in litigation." (Dkt. No. 137 at 15). Based on our analysis above finding the absence of "bad faith conduct" exhibited by E2E, the Court finds that there are no other bases to award Cabela's attorneys' fees or expert fees under 35 U.S.C. § 285.

### CONCLUSION

After considering the Parties' arguments, and for the reasons provided above, the Court finds that overall, E2E litigated its case in an objectively reasonable manner. As a result, this case does not rise to the level of an "exceptional" one as set out by 35 U.S.C. § 285 and *Octane Fitness*. Therefore, Cabela's Fee Motion (Dkt. No. 137) is hereby **DENIED**.

**SIGNED this 24th day of October, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[2] In defining what is meant by the "totality of the circumstances," the Supreme Court cites the Copyright Act case of *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994) for the proposition that "district courts [can] consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness,* 134 S. Ct. at 1756 at n. 6 (citations omitted). The Court has engaged in the application of these factors in the above discussion to reach its finding that E2E litigated in an objectively reasonable manner.